**In the Matter of LEHIGH VALLEY RAILROAD COMPANY, Debtor.**

**In re Proceedings for the REORGANIZATION OF A RAILROAD.**

**No. 70-432.**

United States District Court, E. D. Pennsylvania.

July 2, 1974.

Duane, Morris & Heckscher by William R. Traub, and Robert L. Pratter, Philadelphia, Pa., for the trustees, Lehigh Valley Railroad Co., debtor.

Richard R. Bongartz, Philadelphia, Pa., for the trustees, Penn Cent. Trans. Co.

Michael Haley, for the U. S. Dept. of Trans.

Wilmer, Cutler & Pickering by Barry E. Carter, Washington, D. C., for U. S. Railway Ass'n.

Sullivan & Worcester by David M. Schwartz, Washington, D. C., for Lehigh Coal & Navigation Co.

Shearman & Sterling by John E. Hoffman, Jr., and Matthew C. Gruskin, New York City, for First National City Bank of New York, as indenture trustee.

Stern, Maxmin & Stern by I. Jerome Stern, Philadelphia, Pa., for A. C. Speyer, Jr., bondholder, Lehigh Valley Harbor Terminal.

Morgan, Lewis & Bockius by Edward B. Cloues, II, Philadelphia, Pa., for The Fidelity Bank and Manufacturers Hanover Trust Co.

Storey, Barnett, Hayes & Quinn by William P. Quinn, Philadelphia, Pa., for Delaware & Hudson Railway Co.

T. P. Shearer, Pittsburgh, Pa., for United Trans. Union.

Gordon P. MacDougall, Washington, D. C., for the Commonwealth of Pennsylvania.

Leroy D. Touchton, Trenton, N. J., for the State of New Jersey.

Ballard, Spahr, Andrews & Ingersoll by Oliver Caldwell Biddle, Philadelphia, Pa., for indenture trustees.

Alfred N. Lowenstein, Harrisburg, Pa., for Pennsylvania Public Utility Commission.

Mulholland, Hickey & Lyman by Geoffrey N. Zeh., Washington, D. C., for Railway Labor Executives' Ass'n.

## MEMORANDUM IN SUPPORT OF FINDINGS AND ORDER NO. 252 PURSUANT TO § 207(b) of the Regional Rail Reorganization Act of 1973

FULLAM, District Judge.

I have entered Findings and Order No. 252, directing that the Lehigh Valley reorganization not proceed pursuant to the provisions of the Regional Rail Reorganization Act of 1973 (hereinafter "RRRA" or the "Act") because that statute fails to provide a process which would be fair and equitable to the Debtor's estate. The reasons leading to this determination are essentially the same as those set forth in my Memorandum in Support of Findings and Order No. 1597 in the Penn Central proceeding, which Memorandum is incorporated herein by reference.

There are, however, a few additional issues to be discussed in the Lehigh Valley proceeding. The Lehigh Valley Trustees have taken the position that because accruing and unpaid administra-

tion expenses (namely, local real estate taxes) amount to only about $1 million per year, the Lehigh Valley estate would be better off by effectuating a liquidation of its rail properties through the processes of the Act, than by attempting to achieve that result outside the Act.

To meet creditors' objections to the receipt of consideration for rail properties in the form of Conrail stock, possible USRA obligations, and a deficiency judgment against Conrail, the Trustees contend that the Lehigh Valley estate could be compensated exclusively in government-guaranteed USRA obligations. The government supports the Trustees' contention, going so far as to argue that, even if the Final System Plan did not provide for compensation to the Lehigh Valley solely in government-guaranteed obligations of USRA, the Special Court could direct such payment.

There are two questions in this connection: (1) Whether § 303 (c)(2)(A) of the Act permits the Special Court to reallocate USRA obligations from another railroad in reorganization, in the absence of a finding that the securities allocated in the plan to that railroad exceed the "constitutional minimum"; and (2) whether, if USRA does not originally allocate all of the potential government-guaranteed obligations available to it, the Special Court may require that the unused obligational authority be exhausted, in the absence of congressional approval.

As I read the statute, there is grave doubt as to whether either of these questions can be answered in the affirmative. Moreover, even assuming that the Special Court could obviate unfairness or lack of equity to the Lehigh Valley estate, by depriving some other estate of fairness and equity, there can be no present assurance that it would do so.

Thus, I am not persuaded that the special circumstances of the Lehigh Valley estate justify any different conclusion than that expressed in the Penn Central case.

For all of these reasons, an Order has been entered expressing this Court's view that the RRRA does not provide a process which would be fair and equitable to the estate of the Debtor.

## ORDER NO. 252

And now, this 1st day of July, 1974, in conformity with the requirements of § 207(b) of the Regional Rail Reorganization Act of 1973, this Court finds and hereby orders:

1. That the Regional Rail Reorganization Act of 1973 does not provide a process which would be fair and equitable to the estate of the Debtor.

2. That the reorganization of the estate of the Debtor shall not be carried out pursuant to the Regional Rail Reorganization Act of 1973.

3. That this Finding and Order shall be stayed pending the final determination of the Special Court pursuant to the Act.